IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS


DEWANDA CROCHRELL,

Plaintiff,

v.

ILLINOIS DEPARTMENT OF
TRANSPORTATION and VICTOR A.
MODEER, JR., in his Individual and
Official Capacity,

Defendants.                                    No. 03-CV-870-DRH

MEMORANDUM AND ORDER

HERNDON, District Judge:

I. Introduction

Before the Court is a Motion for Summary Judgment submitted by

Defendants Illinois Department of Transportation ("IDOT") and Victor A. Modeer,

Jr.  (Doc. 32.)   Counts I and III of Plaintiff Dewanda Crochrell's four-count

Complaint allege that Defendants engaged in racial and gender discrimination by

failing to promote her.   Counts II and IV allege that Plaintiff was wrongfully

terminated after she filed discrimination charges. (Doc. 1.)[1]  Defendants now seek

summary judgment on all four Counts.  (Doc. 32.)  Plaintiff responds in opposition

to Counts I and II.  (Doc. 41.)  For the following reasons, the Court grants in part

---

[1] Plaintiff's Counts I and II are asserted against Defendant IDOT; Counts III
and IV are asserted against Defendant Modeer, Jr.  (Doc. 1.)

and denies in part Defendants' Motion.  (Doc. 32.)

## II. <u>Background</u>

On September 13, 2002, IDOT's District Eight office ("District Eight")
posted a job opening for the Budget and Fiscal Officer ("BFO") position.  (Doc. 33,
Ex. G.)  This opening was the result of a vacancy created by the pending retirement
of Joseph Ringhofer, who occupied the District-Eight BFO position from 1977 to
December 31, 2002. (Doc. 33, Ex. C, pp. 11-12.)  The job posting indicated that the
District Eight BFO is "responsible for providing expertise and direction for
management in the areas of budget preparation, review, analysis, monitoring,
forecasting and control, and for invoice processing."  (Doc. 33, Ex. G.)

Two people applied for the position: Plaintiff Dewanda Crochrell and
William Rakowski.  (Doc. 1, ¶ 12; Doc. 33, Ex. C, pp. 11-12.)  Plaintiff, an African-
American female, had been employed for approximately four-and-a-half years by
Defendant as a Motor Fuel Tax Auditor in District Eight.  (Doc. 33, Ex, C, p. 3.)  In
that role, her duties included "independently perform[ing] professional external
auditing activities in examining a variety of source documents to audit all receipts
and disbursements of Motor Fuel Tax (MFT) funds by all municipalities, counties,
and road districts within the district."  (Doc. 33, Ex. I.)  Prior to her employment
with Defendant, Plaintiff served for three years as an accountant with the State of
Illinois's Division of Family Support, and for ten years as a senior contract auditor
for the Department of Defense, where she audited contracts with vendors, among

other duties. (Doc. 42, Crochrell Depo., pp. 26-49.)  Plaintiff earned a bachelors degree in accounting, with a minor in electronic data processing, from Southern Illinois University at Carbondale in 1985. (Doc. 33, Crochrell Depo., pp. 14-15.) At the time of her pleadings, she was a CPA candidate. (Doc. 41, p. 2.)

William Rakowski, a Caucasian male, had been employed in Defendant's District Eight office since 1978.  Since 1986, he worked as Engineering Technician IV – Office Coordinator in Program Development.  (Doc. 33, Ex. O.)  In that role, Rakowski's duties included preparing and submitting reports and other budget-related work that took, by his estimate, two-to-three weeks per year.  (Doc. 33, Rakowski Depo., p. 34.)  Rakowski received an associates degree in applied science and drafting technology from Belleville Area College in 1977.  (Doc. 33, Ex. N, p. 3.)

Though the opening for the District Eight BFO position was not posted until September 13, 2002, the outgoing BFO, Ringhofer, began training Rakowski in advance of this date.  (Doc. 42, Ringhofer Depo., pp. 59-60, 88-89; Doc. 42, Franklin Aff.)  Prior to initiating this pretraining, Ringhofer informed District Eight's Administrative Services Manager, Jeffrey Berry, of his intention to train Rakowski. Berry expressed no objection to Ringhofer's pretraining (Doc. 42, Ringhofer Depo., pp. 88-89), despite the fact that IDOT has a specific pretraining policy in its Personnel Policies Manuel requiring "[a] structured training program [to] be submitted to the Bureau Chief of Personnel Management for approval" (Doc. 42, Ex. 7, pp. 28-29).  While the nature and extent of Rakowski's pretraining is unclear,

several District Eight employees observed Rakowksi meeting regularly with Ringhofer.  (Doc. 42, Franklin Aff.; Doc. 42, Hammonds Aff.)

After Plaintiff and Rakowski submitted their applications, both Berry and Kathy Burton — a fellow IDOT employee — evaluated the candidates.  (Doc. 33, Ex. E., pp. 19-30.)  Berry and Burton's evaluation consisted of asking Plaintiff and Rakowski a series of questions, then grading them on their performances.  (*Id.*)  The questions were divided into four categories: knowledge and experience (40% of a candidate's overall score); education and training (25%); analytical skills (25%); and planning (10%).  (Doc. 33, Ex. E, pp. 16-18.)  Ringhofer composed the initial draft of the questions that were  ultimately used by Berry and Burton.  (Doc. 42, Ringhofer Depo., pp. 88-89.)

Based on the responses given during these interviews, each candidate's answers were graded on a scale of one to ten.  (Doc. 33, Ex. E., p. 81.)  Rakowski was deemed to have scored higher in the areas of knowledge and experience, analytical skills, and planning, while Plaintiff scored higher in the area of education and training.  (Doc. 33, Ex. E., pp. 79-80.)Overall, Rakowski obtained a composite score of 8.22/10.00, while Plaintiff received a score of 6.11/10.00.  (Doc. 33, Exs. S, T, U.)  On this basis, IDOT offered the District Eight BFO position to Rakowski. (Doc. 33, Ex. V.)  Plaintiff's evaluators noted that "[a]lthough Ms. Crochrell described supervisory, accounting and financial experience she has had that makes her the best candidate for the [BFO] position, she did not display experience and training

4

with IDOT's main frame computerized accounting systems." (Doc. 33, Ex. S.)

On March 11, 2003, after Rakowski received the BFO promotion, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. (Doc. 42, Ex. 36.)  In response, Defendant assigned a civil rights investigator, Jan Fuller-Johnson, to investigate Plaintiff's claims.  (Doc. 42, Ex. 37.) Although Fuller-Johnson determined that Plaintiff had been discriminated against on the grounds of race and sex (Doc. 42, Ex. 1, p. 4), a three-member IDOT committee consisting of an administrative services manager, the Deputy Director of Finance and Administration, and an IDOT attorney, ultimately found that no discrimination had taken place. (Doc. 42, Ex. 13.)

After the committee made its finding, Plaintiff continued working for IDOT. Then, on June 6, 2003, IDOT received an abstract from the Illinois Secretary of State with information about IDOT employees' driving records.   (Doc. 33, Sonnenberg Depo., pp. 89-93.)  Included within the abstract was a notice that Plaintiff's Illinois driver's license had been suspended due to her failure to comply with vehicle-emissions inspection laws.  (*Id.*)  According to IDOT policies, all employees whose position requires a valid driver's license must notify a supervisor if their driver's license becomes suspended; discipline for failing to adhere to this policy includes (1) suspension for each day the license is suspended, or (2) discharge if the violation exceeds thirty days.   (*Id.* p. 105.)  Plaintiff's license had been suspended since April 12, 2003, a period of more than thirty days.

On June 9, 2003, Plaintiff's immediate supervisor, Jennifer Obertino, informed Plaintiff that she was being placed on paid administrative leave. (Doc. 33, Crochrell Depo., pp. 116-18; Ex. F.)  On August 15, 2003, Illinois' Central Management Services terminated Plaintiff's employment. (Doc. 33, Exs. F, AA.) Plaintiff and AFSCME, her union, then filed a grievance contesting the discharge. (Doc. 33, Ex. CC.)  After an arbitration hearing, an arbitrator concluded on February 27, 2004 that Plaintiff's discharge had not been for just cause and that Plaintiff should be immediately reinstated without backpay or benefits.  (Doc. 33, Ex. F.) Thereafter, Plaintiff returned to work.

Plaintiff filed a four-count Complaint against Defendants on December 23, 2003.  (Doc. 1.)  Counts I and II assert claims against IDOT for failure to promote and retaliation, respectively, while counts III and IV assert the same claims against Victor Modeer, Jr., pursuant to **42 U.S.C. § 1981** and **42 U.S.C. § 1983.** (Doc. 1.)

### III.  Analysis

### A.  Summary Judgment Standard

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Oats v. Discovery Zone*, **116 F.3d 1161, 1165 (7th Cir. 1997) (citing** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986))**.  The movant bears the burden of establishing

the absence of fact issues and entitlement to judgment as a matter of law. ***Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323)**.

In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. ***Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1124 (N.D. Ill. 1995)**. The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. ***Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))**. Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the nonmoving party. ***Michas v. Health Cost Controls of IL, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000)**.

This standard is "applied with added rigor" in employment discrimination cases, where intent and credibility are crucial issues. ***Webb v. Clyde L. Choate Mental Health & Dev. Ctr.*, 230 F.3d 991, 997 (7th Cir. 2000); *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *King v. Preferred Technical Group, Inc.*, 166 F.3d 887, 890 (7th Cir. 1999)**. This reflects the pronouncement that in employment discrimination cases, which often involve issues of motive and intent, summary judgment must be approached with caution. ***Huhn v. Koering Co.*, 718 F.2d 239, 242 (7th Cir. 1983)**.

### B.  Defendant Victor Modeer, Jr.

Defendants argue that the Court should enter summary judgment in their favor as to Counts III and IV against Defendant Victor Modeer, Jr. because nothing in the record indicates that he was involved with the facts of this case. (Doc. 33, pp. 12-13.)  Plaintiff agrees that summary judgment should be granted as to these claims. (Doc. 41, p. 10.)  Therefore, the Court grants summary judgment in favor of Defendant Victor Modeer, Jr. on Counts III and IV, terminating both those counts and Victor Modeer, Jr. as a defendant.

### C.  Eleventh Amendment Arguments

Defendants argue that Plaintiff's claims under **42 U.S.C. §§ 1981 and 1983** are barred by the Eleventh Amendment. (Doc. 33, pp. 11-12.)  Plaintiff responds that she "has not sued IDOT under either of these statutes but solely under Title VII." (Doc. 41, p. 10.)

The Eleventh Amendment provides states and state agencies with immunity from suits based on **42 U.S.C. §§ 1981 and 1983**.  ***Quern v. Jordan*, 440 U.S. 332, 344-45 (1979); *Rucker v. Higher Educ. Aids Bd.*, 669 F.2d 1179, 1184 (7th Cir. 1982) (noting that Eleventh Amendment immunity bars section 1981 claims)**.  Illinois has not waived this immunity.  Therefore, the Court dismisses Plaintiff's claims against Defendant IDOT to the extent, if any, they are based on **42 U.S.C. §§ 1981 and 1983**.

### D.  Failure To Promote

Title VII, **42 U.S.C. § 2000e** ("Title VII"), declares it unlawful for an employer to discharge or otherwise discriminate against "any individual" in the terms or conditions of employment "because of such individual's race, color, religion, sex, or national origin." **42 U.S.C. § 2000e-2(a)**. The purpose of this provision is to prevent "'disparate treatment of men and women in employment,'" regardless of form. ***Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64 (1986))**. "A plaintiff may meet his burden of proof under Title VII by offering either direct proof of discriminatory intent or by proving disparate treatment through the indirect, burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp.*" ***Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir. 2001)**. Here, with regard to her failure-to-promote claim, Plaintiff has not presented direct evidence of discriminatory intent. Therefore, the Court turns to the familiar burden-shifting method laid out in ***McDonnell Douglas v. Green***.

In ***McDonnell Douglas***, the Supreme Court provided the appropriate burden-shifting framework in an employment-discrimination case. ***McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)**. The Court there held that in order to succeed, a plaintiff must first establish a prima facie case of discrimination. ***Id.* at 801**. In the failure-to-promote context, a plaintiff establishes a prima facie case by showing "(1) she is a member of a protected group; (2) she was qualified for the position sought; (3) she was rejected for the position; and (4) the employee

9

promoted was not a member of the protected group and was not better qualified than the plaintiff." **Johnson v. Nordstrom**, **260 F.3d 727, 732 (7th Cir. 2001)** (**citing** **Payne v. Milwaukee Cty.**, **146 F.3d 430, 434 (7th Cir. 1998)**). "To withstand summary judgment on the prima facie case, [plaintiff] need only show that there is a genuine issue of material facts regarding [the] elements." **O'Neal v. City of Albany**, **293 F.3d 998, 1003 (7th Cir. 2002) (citing Stalter v. Wal-Mart Stores, Inc., 195 F.3d 285, 289 (7th Cir. 1999).**

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for its conduct. If the defendant carries this burden, the burden shifts back to the plaintiff, who must demonstrate that the employer's proffered rationale was a pretext for discrimination. **Id.; Johnson**, **260 F.3d at 731-32.** At the pretext stage, the focus of the inquiry "is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." **Stewart v. Henderson**, **207 F.3d 374, 378 (7th Cir. 2000)**. In other words, the plaintiff's evidence must tend to show that "the employer's proffered reasons are factually baseless, were not the actual motivation for the [hiring decision] in question, or were insufficient to motivate the [hiring decision]." **Wilson v. AM General Corp.**, **167 F.3d 1114, 1120 (7th Cir. 1999)**. Further, "[b]ecause a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes summary judgment." **Zaccagnini v. Chas. Ley Circulating Co.**, **338**

10

**F.3d 672, 676 (7th Cir. 2003)**.  Thus, a plaintiff may avoid summary judgment by identifying specific facts that place the defendant's explanation(s) in doubt.

Here, Defendant acknowledges that Plaintiff has established at least the first three elements of her failure-to-promote prima facie case.  (Doc. 33, p. 15).  It disputes, however, whether Plaintiff can establish the fourth element, that Rakowski — the individual promoted instead of Plaintiff — lacked superior qualifications. Plaintiff responds by arguing that it has established a genuine issue as to each element of its prima facie case.

The Court finds that Plaintiff has raised a genuine issue regarding the superiority of Rakowski's credentials, and thus that Plaintiff can establish a prima facie case of discrimination with regard to her failure-to-promote claim.  Specifically, while the facts indicate that Rakowski received a higher score on his departmental evaluation, and while this evaluation was the sole basis for determining who was promoted to BFO, there is a factual question about whether Plaintiff was at least as qualified as Rakowski.  Both Plaintiff and Rakowski had sufficient experience for the BFO position.[2]  Rakowski, however, benefitted from significant pretraining provided by the outgoing BFO, Ringhofer, who also authored the first draft of the questions ultimately used to evaluate the candidates.  Plaintiff's candidate-evaluation form is instructive in this respect; as it indicates, although Plaintiff's experience made her

_____

[2] Plaintiff, in fact, occupied the same position that Ringhofer occupied prior to becoming District Eight BFO.  (Doc. 42, Ringhofer Depo., pp. 10-11.)

the "best candidate for the [BFO] position," (Doc. 33,Ex. S), she lacked sufficient experience with IDOT computerized accounting systems to earn the promotion. Accordingly, the Court finds that a genuine issue exists as to whether Rakowski's credentials were, in fact, superior to Plaintiff's.[3]  Plaintiff can therefore meet her prima facie burden.

The burden then shifts to Defendant, who must offer a legitimate, nondiscriminatory explanation for its conduct. ***McDonnell Douglass*, 411 U.S. at 802**. Defendant points out that Rakowski was more qualified than Plaintiff and that he received a higher score on his departmental evaluation.  (Doc. 33.)  Plaintiff responds by arguing that this reason is pretextual.

To establish pretext, as noted above, Plaintiff must show that

---

[3] Defendant's argument against Plaintiff's establishment of the fourth prima facie element is essentially the same as its argument against Plaintiff's establishment of pretext.  For both arguments, Defendant relies heavily on ***Milbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002)**. *Milbrook*, however, is distinguishable.  In that case, the Seventh Circuit held that

> where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicant's competing qualifications does not constitute evidence of pretext "unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the person was better qualified for the position at issue."

***Milbrook*, 280 F.3d at 1180**.  As that language indicates, the ***Milbrook*** standard — to the extent it applies — is relevant in the pretext, not prima facie, context.  At the prima facie stage, all a plaintiff must do is establish a genuine issue as to each of the prima facie elements. ***O'Neal*, 293 F.3d at 1003**.  Moreover, here Plaintiff does not rely solely on differences in qualifications in order to prove her case.  Rather, her allegations concerning Defendant's conduct focus in no small part on Ringhofer's pretraining of Rakowski and his influence over IDOT's hiring process.

Defendant's proffered legitimate, nondiscriminatory reasons for failing to promote her were "factually baseless, were not the actual motivation for the [hiring decision] in question, or were insufficient to motivate the [hiring decision]." **Wilson, 167 F.3d at 1120**. Defendant maintains that its proffered reason for promoting Rakowski — his higher score on the evaluation — is honest, and therefore that a finding of pretext is improper.

The Court finds that a genuine issue exists as to whether IDOT's hiring decision was pretextual. This fact issue arises directly out of outgoing-BFO Ringhofer's close involvement with Defendant's hiring process. As noted above, Ringhofer both provided training to one of the two BFO candidates — Rakowski — and then played a significant role in drafting the questions on which the candidates were evaluated. This raises a genuine issue for at least two reasons. First, Defendant has offered inconsistent explanations for Ringhofer's conduct.[4] ***See Zaccagnini*, 338 F.3d at 676 ("[E]vidence that calls truthfulness into question precludes summary judgment.")**. These inconsistencies call Defendant's truthfulness into question. Second, IDOT contravened its own internal policies by

---

[4] Defendant has alternately stated (1) that Rakowski helped Ringhofer with the fiscal year 2004 budget because of departmental time constraints (Doc. 33, p. 23); (2) that Rakowski assisted Ringhofer due to the "loss of other Department personnel and the need to re-allocate work loads among the remaining employees" (Doc. 42, Exs. 12, 13); (3) that Ringhofer needed to show someone how to do his job due to his pending retirement (Doc. 42, Ringhofer Depo., pp. 57-61; Doc. 42, Berry Depo., pp. 97-98); and (4) that Rakowski was selected to train with Ringhofer due to his "non-union management" status. (Doc. 42, Exs. 12, 13.)

pretraining Rakowski without submitting a "structured training program" to the Bureau Chief of Personnel Management.   (*See* Doc. 42, Ex. 7, pp. 28-29).   This failure raises the question of whether Defendants' proffered nondisrcriminatory explanation was, in fact, the "actual motivation" for its hiring decision.

### E.    Retaliation

As with a Title VII failure-to-promote action, a plaintiff can offer direct or indirect evidence to establish a retaliation claim under Title VII. ***Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 531 (7th Cir. 2003) (citing *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002))**.   Here, Plaintiff provides both.   Thus, both types of evidence are analyzed below.

#### 1.    *Direct Evidence of Retaliation*

In order to succeed on a retaliation claim via direct evidence, a plaintiff must show "a statutorily protected activity, an adverse employment action, and a causal connection between the two." ***Haywood*, 323 F.3d at 531**.   Once such evidence is introduced, "the case must be tried unless the defendant presents unrebutted evidence that it would have taken the adverse employment action against the plaintiff anyway, 'in which event the defendant's retaliatory motive, even if unchallenged, was not a but-for cause of the plaintiff's harm.'" ***Id.* (quoting *Stone*, 281 F.3d at 642)**.

Here, Defendant acknowledges that Plaintiff can establish having

engaged in a protected activity (filing a discrimination claim) and having suffered an adverse employment action (termination). (Doc. 33, pp. 17-18.) As such, the prima-facie question is reduced to whether Plaintiff can establish a causal connection between her pursuit of a discrimination claim against IDOT and the adverse employment action she suffered.

In determining whether a causal connection exists between protected activity and an adverse employment action, a "key inquiry" is whether the individual initiating the adverse action was aware of the protected activity. **Luckie v. Ameritech Corp., 389 F.3d 708, 714 (7th Cir. 2004)**. "A close temporal connection between the two events 'is generally enough to satisfy the third element of the prima facie test.'" **McClendon v. Indiana Sugars, 108 F.3d 789, 797 (7th Cir. 1997) (quoting Rabinovitz v. Pena, 89 F.3d 482, 489 (7th Cir. 1996))**.

Aside from the close temporal proximity between Plaintiff's discrimination claim and her termination,[5] Plaintiff presents two primary pieces of direct causal-connection evidence. First, she notes that Donald Sonnenberg, the District Eight administrative-services manager who investigated her license suspension, included the words "Concerning Civil Rights" on his fax cover sheet to the Illinois Environmental Protection Agency ("IEPA") while investigating her license

---

[5] Plaintiff filed was placed on paid administrative leave less than three months after she filed her discrimination claim. (Doc. 33, Crochrell Depo., pp. 116-18; Doc. 42, Ex. 36.)

suspension.[6]  (Doc. 42, Ex. 32.)  Second, she points out that Jody Rhodes, District

Eight's human resources manager, stated in her deposition that Plaintiff's civil rights

claim "didn't play a huge part in my mind" while she investigated Plaintiff's license

suspension.  (Doc. 42, Rhodes Depo., p. 102.)

As to Plaintiff's second point, Rhodes's deposition transcript is

unpersuasive.   Plaintiff infers from Rhodes's comment that Rhodes allowed

Plaintiff's pending discrimination claim to impact, at least to some extent, her

investigation of Plaintiff's driver's record.  Such an inference, however, is not entirely

supported by Rhodes's deposition.   Indeed, immediately after Rhodes stated that

Plaintiff's discrimination action did not play a "huge" part in her mind, she indicated

that while investigating the license suspension, "I wasn't thinking about [the

discrimination claim]."  (Doc. 42, Rhodes Depo., p. 102.)  This does not appear to

create a causal connection.

The Court finds, however, that Sonnenberg's statement ("Concerning

Civil Rights") raises a genuine issue as to whether IDOT's driver's-license

investigation and subsequent termination of Plaintiff were causally connected.  In

addition to demonstrating that Sonnenberg was aware of Plaintiff's discrimination

claim, these words provide a direct link between IDOT's investigation of Plaintiff's

_____

[6] She further notes that Sonnenberg was "instrumental both in reversing
the IDOT Civil Rights Office's conclusion that Ms. Crochrell had suffered race and
sex discrimination and recommending that she be terminated." (Doc. 41, p. 20.)

driving record and her protected conduct.  Particularly in light of the substantial role Sonnenberg played in Plaintiff's termination, this fact creates a genuine issue as to whether Defendant's investigation was causally connected to Plaintiff's claim. Accordingly, Plaintiff can meet her initial burden.

In order for Defendant to succeed on its Motion, then, it must present unrebutted evidence that Plaintiff would have been terminated regardless of whether she initiated her discrimination action.  Given Sonnenberg's statement, and given the temporal proximity between Plaintiff's discrimination claim and her termination, *see McClendon v. Indiana Sugars, Inc.*, **108 F.3d 789, 798 (7th Cir. 1997) (holding that "a plaintiff may establish [a link between protected activity and an adverse employment action] through evidence that the discharge took place on the heels of protected activity")**, the Court is satisfied that a genuine issue exists as to this question.  Therefore, the Court finds that Plaintiff has raised a genuine issue, via direct evidence, as to whether her discrimination claim was a "but-for" cause of her termination.

2.    *Indirect Evidence of Discrimination*

If a plaintiff offers indirect evidence of retaliation, the ***McDonnell Douglas*** burden-shifting approach applies.  **Haywood, 323 F.3d at 531**.  Under this approach, a plaintiff must first establish a prima facie case of retaliation.  The defendant, then, must advance a legitimate, nondiscriminatory reason for the adverse employment action, and the plaintiff must follow by showing that the

17

defendant's proffered reason is pretextual. ***Id.***

In order to prove a prima facie case of retaliation, the plaintiff must demonstrate that "(1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." ***Id***.  "Under this method, the 'plaintiff so proceeding need not show even an attenuated causal link.'" ***Id.* (quoting *Stone*, 281 F.3d at 644)**.

Defendant contests only the fourth element of Plaintiff's prima facie case — whether Plaintiff was similarly situated with IDOT employees who did not file discrimination claims. (Doc. 33, pp. 17-18.)  In determining whether two employees are similarly situated, a court must look at "all relevant factors." ***Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000) (citing *Spath v. Hayes Wheels Int'l-In., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000))**.  In disciplinary cases, "a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct.  This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." ***Id.* at 617-18 (citations omitted)**.

18

Here, Plaintiff alleges that IDOT employee Blair Chamness "engaged in exactly the same conduct as Ms. Crochell," but that Plaintiff was terminated and Chamness was not. (Doc. 41, p. 18.) Defendant counters that Chamness's situation is distinguishable from Plaintiff's on a number of different grounds, including the facts that Chamness's license was suspended merely due to his failure to pay a late fee for a speeding ticket, and that Chamness maintained good communication throughout the process with the State of Florida, where his speeding ticket was issued. Defendant further notes that IDOT's policy manual "requires discipline for an employee who fails to notify his or her supervisor of an invalid driver's license," and that this discipline includes discharge for employees whose violation exceeds thirty days. (Doc. 33, pp. 6-7.)

For the following reasons, the Court finds that Plaintiff and Chamness were similarly situated, and thus that Plaintiff can meet her prima facie burden. First, both Plaintiff and Chamness were employed in the same IDOT District (Eight) and were subject to the same departmental standards. Second, both committed similar, if not identical, offenses (possessing an invalid driver's license for over thirty days while employed in a position requiring a valid driver's license). Third, the same supervisors — Sonnenberg and Rhodes — were involved in disciplining both employees. (Doc. 33, Ex. FF.) Fourth, upon being confronted with their license suspensions, both Plaintiff and Chamness argued that they were unaware that their licenses had been suspended, and upon being informed of such, promptly acted to

19

ensure that their licenses became valid.

Under *Radue*, these reasons are sufficient to establish that Plaintiff and Chamness were similarly situated, and thus that Plaintiff can meet her prima facie burden. *See Radue*, **219 F.3d at 617**. The burden then shifts to IDOT to provide a legitimate, nondiscriminatory reason for its actions, after which Plaintiff must show that Defendant's legitimate reason was pretextual. For its legitimate, nondiscriminatory reason, Defendant argues generally that Plaintiff's conduct ran counter to IDOT policies requiring employees to maintain valid driver's licenses. Plaintiff responds that despite being similarly situated, Chamness was not discharged, that IDOT departed from its own internal policies to avoid disciplining Chamness, and that "the temporal link between Plaintiff's termination and her charge of discrimination also creates a strong inference of retaliation." (Doc. 41, p. 19.)

Even assuming that Defendant has met its burden, the Court finds that Plaintiff has established a genuine issue as to whether Defendant's explanation was pretextual. Because of the Chamness's divergent treatment, and given the close temporal proximity of Plaintiff's discrimination claim and her discharge, Plaintiff has raised a genuine issue here as to pretext.

## IV.  Conclusion

Therefore, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment. (Doc. 32.) The Court **GRANTS** Defendants'

Motion for Summary Judgment (Doc. 32) as to Plaintiff's Counts III and IV, terminating Victor A. Modeer, Jr., as a Defendant.  The Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 32) as to any **42 U.S.C. §§ 1981 and 1983** claims asserted by Plaintiff against Defendant IDOT in Counts I and II.  The Court **DENIES** Defendants' Motion for Summary Judgment (Doc. 32) as to Plaintiff's Title VII claims in Counts I and II of her Complaint.

**IT IS SO ORDERED.**

Signed this day of 28th day of September, 2005.

/s/          David RHerndon
**United States District Judge**